UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

In re:

    Case No. 20-21594-SMG

ALEXANDER DONG LEE,    Chapter 11

      Debtor.
_____/


**<u>DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION</u>**

Furr & Cohen, P.A.
*Attorneys for the Debtor*
Robert C. Furr, Esq.
Alvin S Goldstein, Esq.
2255 Glades Road, Suite 419A
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
rfurr@furrcohen.com
agoldstein@furrcohen.com

TABLE OF CONTENTS

ARTICLE I Definitions ................................................................................................................1

ARTICLE II Classification of Claims and Interests ....................................................................7

ARTICLE III Treatment of Claims and Interests Under the Plan ...............................................7

ARTICLE IV Impairment ...........................................................................................................18

ARTICLE V Means of Execution and Security for Payments ...................................................18

ARTICLE VI Executory Contracts .............................................................................................19

ARTICLE VII Duties and Fees owed to the Office of the U.S. Trustee ....................................19

ARTICLE VIII Effect of Confirmation and Bar Order…………..…………………….…………..20

ARTICLE IX Post-Confirmation Liquidated Debtor's Structure………………………...………27

ARTICLE X "Cram Down", Modification, Substantive Consolidation.......................................28

ARTICLE XI Retention of Jurisdiction ......................................................................................29

ARTICLE XII Miscellaneous .....................................................................................................30

## DEBTOR'S SECOND AMENDED PLANOF REORGANIZATION

### ARTICLE I
### DEFINITIONS

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

1.1    "Administrative Claim" shall mean a Claim against the estate of the Debtor allowed by order of the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code and that is entitled to priority under section 507(a) of the Bankruptcy Code, or incurred by the Debtor in the ordinary course of business from October 23, 2020 to the Confirmation Date where such claim has been approved by the Court, and shall include all fees payable pursuant to section 1930, of title 28, United States Code.

1.2    "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the estate of the Debtor that is: (a) either (i) scheduled by the Debtor in his Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed; or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Bankruptcy Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court; or (ii) that has otherwise been allowed by a Final Order or pursuant to this Plan that is no longer subject to appeal or certiorari

1

and as to which no appeal or certiorari is pending. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.3    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, which governs the chapter 11 case of the Debtor.

1.4    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to section 157(d) of title 28, United States Code.

1.5    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.6    "Bar Order" shall mean a order entered by this Court barring certain lease guaranty creditors from asserting any claims against the Debtor's spouse as provided in the Settlement Agreement with the spouse.

1.7    "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

1.8    "Case" shall mean these chapter 11 case of the Debtor pending before the Bankruptcy Court and administered under case no. 20-21594-SMG.

1.9    "Cash" shall mean legal tender of the United States or its equivalents, including, but not limited to, bank deposits, checks, and other similar items.

1.10    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.11    "Class" shall mean a group of Claims or interests described in Article III of this Plan.

1.12    "Community Property" shall have the generally accepted meaning under Texas law.

1.13    "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.14    "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to Section 1129 of the Bankruptcy Code.

1.15    "Confirmation Hearing" shall mean the hearing at which the Bankruptcy Court confirms the Plan.

1.16    "Deanne Lee" or "Spouse" shall mean Deanne Lee, an individual and the current, estranged spouse of the Debtor.

1.17    "Debtor" shall mean Alexander Dong Lee, the debtor in possession in the chapter 11 bankruptcy proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida, case no. 20-21594-SMG.

1.18    "Disbursing Agent" shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to paragraph 5.2 of the Plan. The Disbursing Agent shall be Furr and Cohen, P.A.

1.19    "Disclosure Statement" shall mean the Second Amended Disclosure Statement that relates to this Plan, and as approved by the Bankruptcy Court pursuant to section 1125 of the

3

Bankruptcy Code, as such Second Amended Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.20    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Schedules filed in connection with the chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.21    "Distribution" shall mean the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.22    "Divorce Action" shall mean Cause No. DF-19-18473, captioned *In the Matter of the Marriage of Deanne Lee and Alexander and in the Interest of S.J.L., a Child*, pending in the Family Court.

1.23    "Divorce Settlement Documents" shall have the meaning set forth in the Settlement Agreement.

1.24    "Effective Date" shall mean the fifteenth (15th) day following the Confirmation Date, and in the event that such date is not a Business Day, the next Business day thereafter.

1.25    "Family Court" shall mean the 254th Judicial District Court of Dallas County, Texas.

1.26     "Final Order" shall mean an order of judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the

4

order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.27    "Guaranteed Entities" shall mean the Restaurant Entities for whom Deanne Lee has executed a guarantee of such Restaurant Entity's obligations to the Restaurant Landlord.   The specific Restaurant Entities are: (a) Crazy Lemon Sharks, Inc., (b) Crazy Clown Fish, Inc., (c) Crazy Crawfish, Inc., and (d) Crazy Puffer Fish, Inc.  The landlords are   First Colony Mall (POC 48); Crocker Downtown Development (POC 49); Baybrook LPC, LLC (no proof of claim filed); and Mall of Louisiana , LLC (no proof of claim filed.)

1.28    "Impaired Claim" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.29    "Medical Practice Entities" shall have the meaning set forth in the Settlement Agreement.

1.30    "Petition Date" shall mean October 23, 2020, which is the date the Debtor filed his voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

1.31    "Plan" shall mean this Second Amended Plan in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.32    "POC" shall mean a Proof of Claim filed or to be filed by a creditor of the Debtor

5

or co-owner of property of the estate.

1.33    "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.34    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.35    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under Section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtor that has not been assumed.

1.36    "Restaurant Entities" or "Restaurant Entity" shall have the meaning set forth in the Settlement Agreement.

1.37    "Restaurant Landlords" shall mean any person or entity who has entered into a lease agreement or arrangement with one or more of the Restaurant Entities.

1.38     "Schedules" or "Amended Schedules" shall mean the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtor with the Bankruptcy Court in this case.

1.39    "Secured Claim" shall mean a Claim that is (a) secured by a valid and perfected lien on property in which  the Debtor's estate has an interest, but only to the extent of the value of the Claimant's interest in the estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.40    "Settlement Agreement" shall mean the Settlement Agreement announced on the

6

record by Judge Paul Hyman on July 6, 2021 and memorialized on the Term Sheet attached to the Disclosure Statement and incorporated in the Agreement Incident to Divorce

1.41   "Settlement Loan Documents" shall have the meaning set forth in the Settlement Agreement.

1.42   "Spouse POC" shall mean Proof of Claim No. 23, as filed by Deanne Lee in this Bankruptcy Case.

1.43   "Spousal Support" shall have the meaning set forth in the Settlement Agreement.

1.44   "Reimbursement Payment" shall have the meaning set forth in the Settlement Agreement.

1.45   "Unsecured Claim" shall mean any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

## ARTICLE III
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.1 General. Unless otherwise specified, all payments under this Plan shall be paid on the first of the month following the Effective Date.

3.2 Administrative Claims. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a Final Order allowing any such administrative claim, whichever is later; or (b) upon such other terms as may be agreed to between

the Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) counsel for the Debtor and other professionals of the estate, who shall final a fee application by the deadline set by the Bankruptcy Court, approximately twenty-one (21) days before the Confirmation Hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Bankruptcy Court approval.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, shall be filed with the Bankruptcy Court and served upon the Debtor at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Bankruptcy Court. Except as provided herein, any Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

3.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

3.4 <u>Tax Claims</u>. Priority Tax Claims are assessed, unsecured income, employment, and other taxes as described by section 507(a)(8) of the Bankruptcy Code. Although the Debtor does not believe there are any such claims, to the extent there are, they shall be paid in full on the Effective Date.

3.5 <u>Classification of Claims</u>.

**Class 1 – Allowed Secured Claim of JPMorgan Chase Bank:**

(a)    Description:  Class 1 consists of the secured claim of JPMorgan Chase Bank, National Association, secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #37 in the amount of $619,103.73.  The Debtor believes that the value of the collateral exceeds the amount due to the claimant.

(b)    Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    Impairment:  The Class 1 Claim is unimpaired and the Class 1 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 2 – Allowed Secured Claim of First United Bank & Trust Co.:**

(a)    Description:  Class 2 consists of the secured claim of First United Bank & Trust Co., secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida, which secured the Debtor's guarantee of the obligations of its subsidiary restaurant corporation, Crazy Fish, Inc., to the claimant.   The claimant filed POC #46 in the amount of $1,864,444.45.  The Debtor believes that the value of the collateral exceeds the amount due to the claimant.

(b)    Treatment:   This claim is unimpaired and the claimant was paid in full when the property securing the claim was sold.  The note which the Debtor guaranteed was assigned to the Debtor in connection with the sale and has been claimed as exempt homestead proceeds by the Debtor.  The Claimant will receive no further distribution.

(c)    Impairment:  The Class 2 Claim is unimpaired and the Class 2 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 3 – Allowed Secured Claim of First United Bank & Trust Co.:**

(a)    <u>Description:</u>  Class 3 consists of the secured claim of First United Bank & Trust Co., secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 3 Claim is unimpaired and the Class 3 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 4 – Allowed Secured Claim of Broward County Tax Collector**

(a)    <u>Description:</u>  Class 4 consists of the secured claim of the Broward County Tax Collector for 2020 property taxes, secured by the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #15 in the amount of $35,997.11.  The Debtor believes that the value of the collateral exceeds the amount due to the claimant.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 4 Claim is unimpaired and the Allowed Class 4 Claimholder is deemed to have accepted the Plan.

**Class 5 – Allowed Secured Claim of Americredit Financial Services, Inc.**

(a)    <u>Description:</u>  Class 5 consists of the Allowed Secured Claim of Americredit Financial Services, Inc. based on amounts due pursuant to an automobile loan for a 2020 GMC Yukon XL.  The claimant filed POC #3 in the amount of $79,644.33.

(b)    <u>Treatment:</u>  The Claimant shall continue to be paid in accordance with the terms of

10

the documents evidencing the Claim until such Claim has been paid in full.  The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full.

(c)     Impairment:   The Class 5 Claim is unimpaired and the Allowed Class 5 Claimholder is deemed to have accepted the Plan.

## Class 6 – Allowed Secured Claim of Bank of America

(a)     Description:  Class 6 consists of the Allowed Secured Claim of Bank of America based on amounts due pursuant to a loan for the purchase of an N 2007 Sea Ray 52DB boat.  The claimant filed POC #1 in the amount of $408,104.36

(b)     Treatment:  Pursuant to the *Proposed Notice of Abandonment* [ECF No. 62], filed by the Debtor on December 24, 12, 2020, the Debtor has abandoned his interest in the collateral securing the claim.  To the extent necessary, the claimant will have relief from the automatic stay to pursue recovery of the collateral.  The claimant will receive no further distribution from the estate.

(c)     Impairment:   The Class 6 Claim is unimpaired and the Allowed Class 6 Claimholder is deemed to have accepted the Plan.

## Class 7 – Allowed Secured Claim of Great Midwestern Bank

(a)     Description:  Class 7 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 465 Four O'Clock Road, #303A, Breckenridge, Colorado. The Debtor scheduled the claim at $425,264.90.

(b)     Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)     Impairment:  The Class 7 Claim is unimpaired and the Class 7 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 8 – Allowed Secured Claim of Great Midwestern Bank

(a)     Description:  Class 8 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 42 Snowflake Drive, Breckenridge, Colorado. The Debtor scheduled the claim at $683,818.29.

(b)     Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)     Impairment:  The Class 8 Claim is unimpaired and the Class 8 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 9 – Allowed Secured Claim of Great Midwestern Bank

(a)     Description:  Class 9 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 42 Snowflake Drive, Breckenridge, Colorado. The Debtor scheduled the claim at $305,217.89.

(b)     Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)     Impairment:  The Class 9 Claim is unimpaired and the Class 9 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 10 – Allowed Secured Claim of Toyota Motor Credit Corporation

(a)     Description:  Class 10 consists of the Allowed Secured Claim of Toyota Motor Credit Corporation based on amounts due pursuant to an automobile loan for a 2020 Lexus RX350. The claimant filed POC #16 in the amount of $44,950.00.

12

(b)    <u>Treatment:</u>  The Claimant shall continue to be paid in accordance with the terms of the documents evidencing the Claim until such Claim has been paid in full.  The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full.

(c)    <u>Impairment:</u>    The Class 10 Claim is unimpaired and the Allowed Class 10 Claimholder is deemed to have accepted the Plan.

**Class 11 – Allowed Secured Claims of First United Bank & Trust Co.**

(a)    <u>Description:</u>  Class 11 consists of the Allowed Secured Claims of First United Bank & Trust Co. based on personal guarantees of debts of the Debtor's Restaurant Entities.  The claimant filed POC Nos. 29, 30, 31, 32, 33, 34, 35, 36, 40, and 41, all claiming an amount due of $0.00 and asserting a security interest in a certificate of deposit of one of the Debtor's Restaurant Entities.

(b)    <u>Treatment:</u>  The Restaurant Entities will continue to service the debt in the ordinary course of business.  The Debtor will remain on his personal guaranty.

(c)    <u>Impairment:</u>  The Class 11 Claim is impaired and entitled to vote to accept or reject the Plan

**Class 12 – Allowed Secured Claim of First United Bank & Trust Co.**

(a)    <u>Description:</u>  Class 12 consists of the Allowed Secured Claim of First United Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from Restaurant Entity, Crazy Silky Sharks, Inc., to the claimant.  The claimant filed POC #43 in the amount of $100,423.02, which asserts that the value of the collateral exceeds the amount of the claim.

13

(b)    Treatment:    This claim shall be paid at confirmation by Crazy Silk Sharks., Inc. from funds provided by the Debtor's parents.

(c)    Impairment:  The Class 12 Claim is unimpaired.

## Class 13 – Allowed Secured Claim of First United Bank & Trust Co.

(a)    Description:  Class 13 consists of the Allowed Secured Claim of First United  Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from his Restaurant Entity, Crazy Blue Fish LLC to the claimant.  The claimant filed POC #44 in the amount of $1,662,700.77, which asserts that the value of the collateral exceeds the amount of the claim.

(b)    Treatment:    Crazy Blue Fish House LLC will continue to service the debt in the normal course of business and the creditor will continue to maintain its first priority mortgage lien on the real property and improvements.  As noted in the provisions relating to the Class 15 claim below, Deanne Lee will be granted a second priority mortgage lien inferior to the first priority mortgage lien securing the Class 13 Claim as part of the Bankruptcy Settlement Agreement.  The Debtor will remain on his personal guaranty.

(c)    Impairment:  The Class 13 Claim is impaired and entitled to vote to accept or reject the Plan.

## Class 14 – Allowed Secured Claim of First United Bank & Trust Co.

(a)    Description:  Class 14 consists of the Allowed Secured Claim of First United Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from his Restaurant Entity, El Loco Sakana, Inc. to the claimant.  The claimant filed POC #45 in the amount of $214,392.55, which asserts that the value of the collateral exceeds the

14

amount of the claim.

(b)    <u>Treatment:</u>   This claim will be paid in full at confirmation by El Loco Sakana, Inc., from funds provided by the Debtor's parents.

(c)    <u>Impairment:</u>  The Class 14 Claim is unimpaired.

**<u>Class 15 – Allowed Priority Claim of Deanne Lee</u>**

(a)    <u>Description:</u>   The Class 15 Claim consists of the Allowed Priority Claim of Deanne Lee, the Debtor's estranged spouse, arising out of pre-petition and post-petition claims for (i) spousal support and child support, which claims are domestic support obligations under Section 101(14) of the Bankruptcy Code, and (ii) claims for reimbursement, contribution, indemnity, and attorney's fees, and is evidenced by the Spouse POC[1].

(b)    <u>Treatment:</u>   Deanne Lee filed her *Motion to Lift Automatic Stay* [ECF No. 72] on January 8, 2021, seeking relief from the automatic stay so that the Divorce Action can be finalized. Stay relief has been granted [ECF No. 101] and the Debtor and Deanne Lee have resolved their issues as set forth on the record by Judge Paul Hyman and memorialized in the Bankruptcy Settlement Agreement, Agreed Divorce Decree, and Agreement Incident to Divorce. The economic terms of the Divorce are described on the Term Sheet attached to the Disclosure Statement as **Exhibit "D"**.  All the economic terms of the Agreement Incident to Divorce are incorporated into the Debtor's Plan and constitute the treatment of Deanne Lee's Class 15 claim. In addition to division of certain property, she is to be paid $1,400,000 within three days of the Effective Date of the Plan and an additional $1,250,000 payable for a term of 5 years, amortized over 7 years with an annual interest rate of 6%. Payments for 59 months shall be in the amount of

---

[1]   The Spouse POC was filed in an undetermined priority amount.

$18,260.69 with a final balloon payment in month 60 of the remaining principal. This note shall be secured by a lien on the Warehouse real and personal property second only to the lien of First United Bank and shall be guaranteed by all of the Restaurant Entities. This debt shall be non-dischargeable. Deanne Lee, as the holder of the Class 15 claim, will receive the payments and property as described, divided, allocated, transferred, and set aside to her under the terms of the Settlement Agreement, including the present and future payment by the Debtor of the child support and spousal obligations set forth in the Agreed Divorce Decree.  Certain payments for property division and support obligations of the Debtor under the terms of the Settlement Agreement will be evidenced by the Settlement Loan Documents, including the granting of a second priority lien against the warehouse property owned by Crazy Blue Fish House, LLC as referenced in the provisions regarding the treatment of the Class 13 Claim above.   As a condition of the Settlement Agreement and as a condition of her support of the confirmation of this Plan, Deanne Lee has required the entry of the Bar Order, as more specifically described herein.   As additional consideration for the Bar Order, Deanne Lee has agreed to transfer and convey to the Debtor any and all rights, title, and interest in and to the Restaurant Entities and the Medical Practice Entities, such that, after the Effective Date, the Debtor will be the 100% owner thereof.

.       (c)     Impairment:  The Class 15 Claim is impaired and entitled to vote to accept or reject the Plan.   Under the terms of the Settlement Agreement, Deanne Lee has agreed to vote to accept the Plan; provided, however, that Deanne Lee has reserved the right to withdraw such support and vote for acceptance of the Plan in the event of (a) any changes, modifications, or revisions of the terms and provisions of the Settlement Agreement; (b) changes or modifications of the treatment of her Class 15 Claim; (c) the failure of the Family Court to approve the Agreed Divorce Decree,

16

or (d) the failure of the Bankruptcy Court to approve the Bar Order.

**Class 16 – Allowed General Unsecured Claims**

(a)  <u>Description:</u>  Class 16 consists of the Allowed Claims of the general unsecured creditors of the Debtor. A list of all creditors, including general unsecured creditors, is attached as **Exhibit "B"** to the Disclosure Statement.

(b)  <u>Treatment:</u> As provided in additional detail in the Liquidation Analysis, attached as **Exhibit "C"** to the Disclosure Statement, the Debtor estimates that if this case were converted to a Chapter 7 case, the holders of Class 16 Claims would receive little or no distribution.  If the Plan is confirmed, each holder of an Allowed general unsecured Claim against the Debtor will receive its share of $500,000.00, distributed *pro rata* on the Effective Date.  Holders of Allowed General Unsecured Claims will receive no further distribution. The *pro rata* distribution to the Class 16 claimants shall be in full satisfaction, settlement, release and discharge of their respective Allowed Class 16 Claims.  The Debtor estimates that there will be slightly greater than $5 million of Allowed General Unsecured Claims and, therefore, the distribution paid to each holder of an Allowed General Unsecured Claim on the Effective Date will be slightly less than 10%.

(c)  <u>Impairment:</u>  The Class 16 Claims are impaired and any of the Allowed Class 16 Claimholders are entitled to vote to accept or reject the Plan.

**Class 17 – Allowed Spouse Lease Guarantee Claims**

(a)  <u>Description:</u>  Class 17 consists of the Allowed Claims of the Guaranteed Entities.

(b)  <u>Treatment:</u>  In addition to any other treatment such Restaurant Entities may receive in the Plan in Class 16, the Guaranteed Entities that have filed claims, First Colony Mall, claim #48 and Crocker Downtown Development, claim #49, will also receive a *pro rata* distribution

17

sufficient to make their aggregate total distribution under the Plan $400,000. This payment shall be payable from the Debtor's exempt assets, upon which Deanne Lee has asserted a claim and contributed by Deanne Lee.  The Bar Order described herein will be entered in favor of Deanne Lee in consideration for her contribution to the lease guarantee creditors and her agreement to release her claims against all property of the Debtor's estate other than the property she is to receive pursuant to and in accordance with the Settlement Agreement. The Debtor would be unable to confirm the Plan (or any plan) without Deanne Lee's agreement to release her asserted claims described in the Spouse POC against estate property.  Landlord Galleria Mall Investors LLP ("Galleria Mall") and Crazy Lion Fish, Inc. will execute a modified lease and related release agreement, pursuant to which Deanne Lee will be released from her obligations under that certain Guaranty, dated April 16, 2019 (the "Galleria Dallas Guaranty"). Debtor shall remain as the sole guarantor under the Galleria Dallas Guaranty and will reaffirm his liability thereunder in the Plan.

(c)    <u>Impairment:</u>  The Class 17 Claims are impaired and any of the Allowed Class 17 Claimholders are entitled to vote to accept or reject the Plan and the Bar Order.

## ARTICLE IV
### IMPAIRMENT

Classes 11, 13,  15, 16, and 17 are impaired under this Plan. Impaired classes will be treated as fully set forth in Article III above.

## ARTICLE V
### MEANS OF EXECUTION AND SECURITY FOR PAYMENTS

5.1 All payments as provided for in the Plan shall be funded by the Debtor's Cash on hand, operating income, liquidation of assets and use of exempt assets to obtain the Bar Order, unless otherwise stated.

5.2 Furr and Cohen, P.A. is named as the disbursing agent responsible for making the payments under the Plan. The payments shall be made as provided in Article III.

5.3 Any checks mailed by the Disbursing Agent for the initial payment to a particular creditor which remains not cleared for one hundred twenty days shall be turned over to the reorganized Debtor and the funds shall become funds of the reorganized Debtor.

## ARTICLE VI
### EXECUTORY CONTRACTS

Any and all executory contracts and unexpired leases of the Debtor not expressly assumed herein or assumed prior to the Confirmation Date or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected. The Debtor has assumed the lease with GHW Associates LLP [ECF No. 172].

The Confirmation Order shall constitute an order of the Bankruptcy Court approving all such rejections hereunder as of the Effective Date. Any Claim for damages arising from any such rejection must be filed within 30 days after the mailing of notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtor, the Debtor's estate, or any of the assets of the Debtor's estate, and shall receive no distribution under this Plan or otherwise on account of such Claim. All Allowed Rejection Claims shall be treated in Class 16.

## ARTICLE VII
### DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, the Debtor is required to pay the appropriate sums required pursuant to section 1930(a)(6) within ten days of the entry of the order confirming the Plan. The Debtor must also file all monthly operating reports for the relevant periods indicating

the Cash disbursements for the relevant period.

With respect to post-confirmation periods, the Debtor will pay the United States Trustee fee for post-confirmation periods based upon all post-confirmation disbursements made by the Debtor. The Debtor will also file all post-confirmation quarterly operating reports with the Court until the earlier of the closing of this case or upon dismissal or conversion of this case.

## ARTICLE VIII
### EFFECT OF CONFIRMATION AND BAR ORDER

<u>Binding Effect.</u> The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims, and his respective successors and assigns.

**<u>Bar Order</u>. In connection with the payment to Class 17 Claimants--First Colony Mall (POC 48); Crocker Downtown Development (POC 49); Baybrook LPC, LLC (no proof of claim filed-not allowed); and Mall of Louisiana , LLC (no proof of claim filed-not allowed.), the Confirmation Order shall contain a "Bar Order" under and pursuant to section 105 of the Bankruptcy Code to the effect that, except as expressly otherwise permitted by the Settlement Agreement, all Barred Persons (as defined below) are permanently enjoined, restrained and barred, as of the Effective Date of the Plan, from filing, commencing, conducting, asserting, litigating, or continuing in any manner, directly, indirectly or derivatively, any suit, action, claim, demand, or other proceeding (including without limitation, any proceeding in any judicial, arbitral, administrative, or other forum) against, implicating, or involving Deanne Lee and any real or personal property retained, awarded, or transferred to her in accordance with the terms of the Settlement Agreement, or the Plan, regarding any and all obligations or liabilities she might have, if any, with respect to:**

20

(a) **any claims by any creditors of the Debtor for any guarantees of leases relating to real property occupied by Debtor or one or more of the affiliates of the Debtor, including the following entities:**

    (i)     **Crazy Lemon Sharks, Inc.**

    (ii)     **Crazy Clown Fish, Inc.;**

    (iii)     **Crazy Crawfish, Inc.; and**

    (iv)     **Crazy Puffer Fish, Inc.;**

(b) **any leases for any equipment, fixtures, or other personal properties used in the operation of the Guaranteed Entities; and**

(c) **any other debts, liabilities, or obligations of the Debtor or the Guaranteed Entities, whether written or oral, liquidated or unliquidated, contingent or otherwise, incurred in connection with the operations of the Restaurant Entities prior to the Effective Date of the Plan. For purposes of the Bar Order, the term "Barred Persons" shall mean any person or entity that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest in or other right against, in, arising out of, or in any way related to the Debtor, or the Debtor's bankruptcy estate, whether that person or entity filed a proof of claim or otherwise, provided, however, that Barred Persons shall not include any governmental agencies other than a local, county, or state taxing authority/jurisdiction in connection with ad valorem real or personal property taxes, sales taxes, or taxes due in owing in connection with the sale of alcoholic beverages.**

**Compromise and Settlement.**  Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, his estate and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

**Discharge of Debtor and Final Decree.**  Pursuant to section 1141(d)(5) of the Bankruptcy Code, upon completion of all payments required under the Plan, the Bankruptcy Court shall grant a discharge to the Debtor of any debt that arose before the Confirmation Date, and any debt of a kind specified in sections 502(g), 502(h) or 502(i), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) imposed by the Settlement Agreement; (iii) imposed by the Agreed Divorce Decree; (v) in the nature of a domestic support obligation under section 101 (14A) of the Bankruptcy Code; (vi) excepted from discharge pursuant to section 523 of the Bankruptcy Code; (vii) of a kind specified in section 1141(d)(6)(A) of the Bankruptcy Code if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iv) of a kind specified

in section 1141(d)(6)(B) of the Bankruptcy Code.

Upon satisfaction of all payments required under the Plan to Class 16 creditors, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Bankruptcy Court-approved local form in effect at that time, which shall certify that all payments required under the Plan to Class 16 creditors have been made. The Bankruptcy Court may then grant the Debtor a discharge, pursuant to section 1141(d)(5) of the Bankruptcy Code, if all other conditions are satisfied.

Community Property Discharge. The discharge injunction of Section 534(a)(3) of the Bankruptcy Code shall apply to the following property of the Debtor and Deanne Lee: (a) any Community Property owned by either the Debtor or Deanne Lee as of the Effective Date and (b) any property, whether real or personal, tangible or intangible, allocated and set aside to the Debtor or Deanne Lee as their separate property under any marital property division in the Divorce Decree. Such property shall not be subject to collection efforts by those creditors holding allowable community claims as defined in section 101 (7) of the Bankruptcy Code.

Exculpation. Notwithstanding any provision contained in the Plan to the contrary, the Debtor, the Debtor's professionals, and any property of the foregoing (collectively, the "Exculpated Parties") shall not have or incur any liability to any entity for any prepetition act taken or omitted to be taken in connection with, related to or arising from authorizing, preparing for or filing the Case, or any post-petition act taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, administration of the Plan, the Disclosure Statement, the

23

exhibits to the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the Case, or the confirmation or consummation of the Plan, including, but not limited to (i) any orders approving sales; (ii) formulating, preparing, disseminating, implementing, confirming, consummating, or administrating the Plan (including soliciting acceptances thereof); (iii) the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with the Plan; or (iv) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Notwithstanding the foregoing, for the avoidance of the doubt, this section does not, unless otherwise agreed to by the Debtor: (i) prevent or limit the ability of the Debtor to object to a Claim of an Exculpated Party on any basis other than matters exculpated herein, or (ii) prevent or limit the ability of the Debtor to object to, or defend against, on any basis (a) any Administrative Claim of an Exculpated Party for substantial contribution, or (b) any Administrative Claim of an Exculpated Party arising solely from the Exculpated Party's capacity as a director, provided, however that, nothing in this (ii)(b) shall prevent any Exculpated Party from recovering on a claim under any Debtor's post-petition director and officer insurance policy.

   **Injunction**. The Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor or claims under Class

17 of the Plan are, with respect to any such Claims, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or any of his property; (ii) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum against or affecting Deanne Lee or any of her property for claims identified in the Bar Order; (iii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against the Debtor; (iv) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against Deanne Lee for the claims identified in the Bar Order; (v) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, or any of his property, except as contemplated or allowed by the Plan; (vi) asserting any right of setoff, directly or indirectly, against any obligation due Deanne Lee, or any of her property for the claims identified in the Bar Order, except as contemplated or allowed by the Plan(vii) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (viii) prosecuting or otherwise asserting any right, claim or cause of action against any Exculpated Party, that has been exculpated pursuant to the Plan; **provided, however**, that the injunction provided herein

25

above shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtor or Deanne Lee, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan.

The Confirmation Order shall also provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor are permanently enjoined from and after the Confirmation Date from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor on account of any such Claim; and (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim; provided, however, that nothing contained in the Plan shall preclude the IRS from pursuing an action against any entity, or any governmental entity from pursuing a criminal action against any entity, provided, further, that nothing in the Plan shall constitute a waiver of any rights or defenses of such persons with respect to such actions.

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.

Indemnification Obligations. Except as expressly provided in a previously entered Order of this Court, any order entered by the Family Court in the Divorce Action, the Plan or any contract, instrument, release or other agreement or document entered in connection with the Plan,

26

any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory; provided, however, that (i) all rights, if any, of the Debtor, and the estate in and to any of the Debtor's insurance policies hereby are expressly reserved and are not limited in any way by the Plan; and (ii) nothing in the  Plan shall be deemed to modify any indemnification obligations of the Debtor pursuant to (A) an Order of this Court concerning the retention or employment of a professional or (B) any future or continuing obligations, duties, and responsibilities of the Debtor to Deanne Lee or their child under the Agreed Divorce Decree.  Nothing in the Plan shall be deemed to release the Debtor's insurers from, or limit the obligations of, any of the Debtor's insurers concerning any claims that might be asserted by insureds, additional insureds, or counterparties to contracts or agreements providing for the indemnification by and of the Debtor, to the extent of available coverage.

Terms of Injunctions or Stays. Unless otherwise provided in the Plan or an Order of the Court, all injunctions or stays provided for in the Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.

## ARTICLE IX
### POST-CONFIRMATION DEBTOR'S STRUCTURE

Following the Effective Date, the Debtor shall be free to operate and perform any and all acts without further order from the Court, subject only to the terms of the Plan and Confirmation Order.  Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtor shall be free and clear of all claims and interests of creditors, except as

27

otherwise provided for herein.

# ARTICLE X
## CRAM DOWN AND MODIFICATION

### Utilization of "Cram Down"

If all of the applicable provisions of section 1129(a) of the Bankruptcy Code other than paragraph (8) are found to have been met with respect to the Plan, the Debtor may seek confirmation pursuant to section 1129(b) of the Bankruptcy Code. For the purposes of seeking confirmation under the "cram down" provisions of the Bankruptcy Code, should that alternative means of confirmation prove to be necessary, the Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with section 1129(b) of the Bankruptcy Code.

### Modification of Plan

The Debtor may propose amendments to or modifications of this Plan at any time prior to the Confirmation Date with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtor may, with the approval of this Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such a manner as is necessary to carry out the purposes and effect of this Plan.

The Debtor may modify this Plan at any time after the Confirmation Date and before substantial consummation of the Plan, but may not modify such Plan so that such Plan as modified fails to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.

Any holder of an Allowed claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time

28

fixed by the court, such holder changes such holder's previous acceptance or rejection.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the Plan, whether or not the Plan has been substantially consummated, upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the Plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

## ARTICLE XI
### RETENTION OF JURISDICTION

11.1 From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the liquidated case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

(c) to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other Federal, State or local laws;

(d) to consider any necessary valuation issues under section 506 of the Bankruptcy Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the

29

Debtor's property;

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

(g) to modify this Plan after the Confirmation Date, pursuant to the Bankruptcy Code;

(h) to enforce and interpret the terms and conditions of this Plan;

(i) to enter orders to enforce the title, rights and power of the estates as the Court may deem necessary; and

(j) to enter orders concluding and closing this case;

provided, however, that the Bankruptcy Court shall not have jurisdiction over the enforcement, construction, or interpretation of the terms and provisions of the Agreed Divorce Decree as to any matter or issue relating to the Divorce Action, child or spousal support, custody or possession of the Child, or any other issues are matters within the exclusive jurisdiction of the Family Court.

## ARTICLE XII
### MISCELLANEOUS

12.1 <u>Allowed and Disallowed Claims</u>. Notwithstanding any other provisions of this Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution, shall not be paid in accordance with the provisions of this Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

To the extent that an objection to a Claim is filed and remains unresolved as of the Effective Date, Distributions on such Disputed Claim shall not be made unless and until a Final Order is

entered allowing such Disputed Claim or portion thereof. The Debtor shall account for all Disputed Claims at such time as a Distribution is made by reserving an amount sufficient to make a Distribution on account of such Disputed Claim as if such Disputed Claim were Allowed in full.

12.2 <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

12.3 <u>Defects, Omissions and Amendments</u>. This Plan may be altered, amended or modified by the Debtor before or after the Confirmation Date as provided in section 1127 of the Bankruptcy Code and as set forth in Article X herein and Article X of the Disclosure Statement.

12.4 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida. All rights, duties, and obligations of the Debtor and Deanne Lee relating to the enforcement, construction, or interpretation of the terms and provisions of the Agreed Divorce Decree shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5 <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.6 <u>Regulatory Approval</u>. No regulatory approval is necessary for the confirmation of this Plan.

This Plan is respectfully submitted:

_____

ALEXANDER DONG LEE


        FURR & COHEN, P.A.
        *Attorneys for the Debtor*
        2255 Glades Road, Suite 419A
        Boca Raton, FL 33431
        561-395-0500
        561-338-7532 fax

        By: /s/ *Robert C. Furr*
                Robert C. Furr, Esq.
                Florida Bar No. 210854
                Alvin S. Goldstein, Esq.
                Florida Bar No. 993621
                rfurr@furrcohen.com
                agoldstein@furrcohen.com

32