UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                          Chapter 11
                                                Case No.:  20-21594-SMG
ALEXANDER DONG LEE,

      Debtor.
_____/


## DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

*Furr & Cohen, P.A.*
*Attorneys for the Debtor*
*Robert C. Furr, Esq.*
*Alvin S. Goldstein, Esq.*
*2255 Glades Road, Suite 419A*
*Boca Raton, Florida 33431*
*(561) 395-0500*
*(561) 338-7532 fax*
*rfurr@furrcohen.com*
*agoldstein@furrcohen.com*

SUMMARY OF TREATMENT OF CLAIMS

| Creditor | Class | Claim Type | Treatment |
|----------|-------|------------|-----------|
| JP Morgan Chase Bank | 1 | Allowed Secured Claim | JP Morgan Chase Bank's Class 1 Claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution. |
| First United Bank & Trust Co. | 2 | Allowed Secured Claim | First United Bank & Trust Co.'s Class 2 Claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.  The note evidencing the claim was assigned to the Debtor in connection with the closing. |
| First United Bank & Trust Co. | 3 | Allowed Secured Claim | First United Bank & Trust Co.'s Class 3 Claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution. |
| Broward County Tax Collector | 4 | Allowed Secured Claim | Broward County Tax Collector's Class 4 Claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution. |
| Americredit Financial Services, Inc. | 5 | Allowed Secured Claim | The Claimant shall continue to be paid in accordance with the terms of the documents evidencing the Claim until such Claim has been paid in full.  The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full. |
| Bank of America | 6 | Allowed Secured Claim | The Debtor has abandoned his interest in the collateral securing the claim.  To the extent necessary, the claimant will have relief from the automatic stay to pursue recovery of the collateral.  The claimant will receive no further distribution from the estate. |
| Great Midwestern Bank | 7 | Allowed Secured Claim | Great Midwestern Bank's Class 7 Claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no |

| | | | |
|---|---|---|---|
| | | | further distribution. |
| Great Midwestern Bank | 8 | Allowed Secured Claim | Great Midwestern Bank's Class 8 Claim is unimpaired and was paid in full when the property securing the claim was sold. The claimant will receive no further distribution. |
| Great Midwestern Bank | 9 | Allowed Secured Claim | Great Midwestern Bank's Class 9 Claim is unimpaired and was paid in full when the property securing the claim was sold. The claimant will receive no further distribution. |
| Toyota Motor Credit Corporation | 10 | Allowed Secured Claim | The Claimant shall continue to be paid in accordance with the terms of the documents evidencing the Claim until such Claim has been paid in full. The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full. |
| First United Bank & Trust Co. | 11 | Allowed Secured Claims | The Restaurant Entities will continue to service the debt in the ordinary course of business. The Debtor's guaranty will remain in place. |
| First United Bank & Trust Co. | 12 | Allowed Secured Claim | This debt will be paid in full at confirmation by Crazy Silk Sharks, Inc. from funds provided by the Debtor's parents. |
| First United Bank & Trust Co. | 13 | Allowed Secured Claim | Restaurant Entity, Crazy Blue Fish House LLC, shall continue to service the debt in the normal course of business and the creditor will continue to maintain its liens. The Debtor's guaranty will remain in place. |
| First United Bank & Trust Co. | 14 | Allowed Secured Claim | This debt will be paid in full at confirmation by El Loco Sakana Inc. from funds provided by the Debtor's parents. |
| Deanne Lee | 15 | Allowed Priority Claim | The Debtor and Deanne Lee have resolved their issues as set forth in the Term Sheet attached hereto as **Exhibit "D"**. All the economic terms of the Agreement Incident to Divorce are incorporated into the Plan. Deanne Lee, as the holder of the Class 15 claim, will receive the payments and property as described, divided, allocated, transferred, and set aside to her under the terms of |

| | | | |
|---|---|---|---|
| | | | the Agreement Incident to Divorce, including the present and future payment by the Debtor of the child support and spousal obligations set forth in the Agreed Divorce Decree.  Specifically, the Debtor shall pay Deanne Lee $1,400,000 within 3 days of the Effective Date of the Plan and an additional $1,250,000 over 5 years as set forth in the agreements in monthly payments with interest at 60% amortized over 7 years. This debt shall be secured by a second Deed of Trust on the warehouse property.  Certain payments for property division and support obligations of the Debtor under the terms of the Settlement Agreement will be evidenced by the Settlement Loan Documents. As a condition of the Settlement Agreement and as a condition of her support of the confirmation of the Plan, Deanne Lee has required the entry of the Bar Order, as more specifically described herein and in the Plan.  As additional consideration for the Bar Order, Deanne Lee has agreed to transfer and convey to the Debtor any and all right, title, and interest in and to the Restaurant Entities and the Medical Practice Entities, such that, after the Effective Date, the Debtor will be the 100% owner thereof. |
| General Unsecured Claims | 16 | Allowed General Unsecured Claims | The holders of Allowed General Unsecured Claims will receive $500,000 distributed pro rata on the Effective Date.  Holders of Allowed General Unsecured Claims will receive no further distribution. |
| Spouse Lease Guarantee Claims | 17 | Allowed General Unsecured Claims | In addition to any other treatment these claimants may receive in the Plan in Class 16, the Guaranteed Entities will also receive a total *pro rata* distribution at confirmation in Class 17 sufficient to pay them a total of $400,000 in the aggregate under classes 16 and 17.These funds shall be payable from the Debtor's |

3

| | | | exempt assets and, if necessary, from contribution by Deanne Lee and her consent to use assets upon which Deanne Lee has asserted a claim. The Bar Order described herein and in the Plan will be entered in favor of Deanne Lee in consideration for her agreement and conditioned on a release of her claims against all property of the Debtor's estate other than the property she is to receive pursuant to and in accordance with the Term Sheet attached hereto as **Exhibit "D"**. Landlord Galleria Mall Investors LLP ("Galleria Mall") and Crazy Lion Fish, Inc. will execute a modified lease and related release agreement, pursuant to which Deanne Lee will be released from her obligations under that certain Guaranty, dated April 16, 2019(the "Galleria Dallas Guaranty"). Debtor shall remain as the sole guarantor under the Galleria Dallas Guaranty and will reaffirm his liability thereunder in the Plan. |
| --- | --- | --- | --- |

## DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

Alexander Dong Lee (referred to herein as the "Debtor," and/or "Reorganized Debtor") provides this Debtor's Second Amended Disclosure Statement (the "Disclosure Statement") to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for a creditor to arrive at a reasonably informed decision in exercising its right to abstain from voting or to vote for acceptance or rejection of the Debtor's Second Amended Plan of Reorganization (the "Plan"). A copy of the Second Amended Plan accompanies this Second Amended Disclosure Statement.

Accompanying this Second Amended Disclosure Statement is an order from the Bankruptcy Court setting the time, date and location of the hearing on confirmation of the Second Amended Plan. You may vote on the Second Amended Plan by filling out and mailing the accompanying ballot form to the Court. Your ballot must be filed on or before the date set on the accompanying order. As a creditor, your vote is important. In order for the Second Amended Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the Allowed Claims of Impaired Classes must accept the Second Amended Plan. However, you are advised that the Debtor may be afforded the right under title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") to have the Second Amended Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

THE INFORMATION CONTAINED IN THIS SECOND AMENDED DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR AND HIS ADVISORS AND MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS

BUSINESS OPERATIONS OR THE VALUE OF HIS PROPERTIES) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

You are urged to carefully read the contents of this Second Amended Disclosure Statement before making your decision to accept or reject the Second Amended Plan. Particular attention should be directed to the provisions of the Second Amended Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Second Amended Plan unless the context hereof requires otherwise.

ARTICLE I

DEFINITIONS

The Definitions set forth in Article I of the Plan are incorporated herein.

ARTICLE II

PRELIMINARY STATEMENT AND
HISTORY AND FINANCIAL CONDITION OF DEBTOR

(A) HISTORY OF DEBTOR AND SUMMARY OF REASONS FOR FILING PETITION

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida on October 23, 2020.

6

The Debtor is a physician and a restauranteur. He graduated from Tulane University Medical School in New Orleans, Louisiana in 1990 and finished his residency program in emergency medicine from LSU/Charity Hospital in 1994.  The Debtor moved to Dallas, Texas in 1994 and began his career in emergency medicine. In 2002, the Debtor moved to Florida and worked for an emergency practice in Florida for the next ten years. In 2015, he purchased an interest in an ER practice in Dallas and traveled back and forth between Florida and Texas but never gave up his Florida residency as he loved living on the water and boating at his home in Florida.

In 1998, the Debtor, his sister, Julie Osborn (Lee) and his parents, David Lee and Jung S. Lee, opened a Japanese restaurant named The Blue Fish Japanese restaurant near downtown Dallas, Texas.  The restaurant was very successful, and the Debtor and his family began expanding one restaurant at a time in Texas.

By 2019, there were 12 restaurants, including two restaurants outside of Texas, in Breckenridge, Colorado and Boca Raton, Florida.  In 2019, the Debtor and his family also began franchising restaurants to third parties and successfully franchised two existing restaurants in Dallas, Texas.  There was much demand for franchise units in general and the Debtor and his family signed multiple deals to franchise five additional units in late 2019.  The Debtor and his family also began an aggressive expansion plan to expand beyond Texas and signed lease agreements at multiple units, in Texas as well as in Boca Raton, Florida and Louisiana. The business plan was to fund the new expansions with proceeds from the sales of franchised units.

In September 2019, the Debtor's spouse, Deanne Lee ("Deanne Lee" or "Spouse") filed her Petition for Divorce in DF-19-18473 (the "Divorce Proceeding") in the 254th Judicial District Court (the "Texas Family Court") of Dallas County, Texas.  Unfortunately, in March of 2020, the

COVID-19 pandemic began and the whole country went into a lock down for about two months. As a result, all of the restaurants halted operations. Furthermore, all franchise plans came to an abrupt halt as the prospective franchisees were unable to obtain third party funding. At that time, all banks ceased funding new businesses for an indefinite period of time. The plan to franchise five units and use their proceeds to fund the additional units came to a complete standstill.

When the lock down slowly lifted, sales at the restaurants were down more than fifty percent across the board. The Debtor exhausted his cash reserves within a span of months. In an attempt to save some restaurants, the Debtor had to close units that were not as profitable and downsize restaurant operations quite a bit. Units in Katy, Texas, Sugar Land, Texas, The Woodlands, Texas, Houston downtown, Texas, Irving, Texas, North Dallas, Texas and Boca Raton, Florida were all closed.

The Debtor had signed multiple personal guarantees on leases and was therefore personally liable after the restaurants closed. As result, the Debtor filed for chapter 11 protection to reorganize his business and personal finances. As noted, the Debtor has also been in the midst of divorce proceedings with his spouse. His spouse, Deanne Lee, has also guaranteed some of the leases.

Currently nine restaurants are operating, two as franchises and seven as corporate units. Additional restaurants may close if sales do not recover, even though the Debtor has greatly improved efficiency in terms of lower labor costs and negotiated considerable concessions from several landlords through this unprecedented period.

(B) SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

1. **Retention of Professionals/ Motion to Establish Procedures for Monthly Payment**

The Debtor, through counsel, filed an application to employ Robert C. Furr, Esq. and the law firm of Furr & Cohen, P.A. as their general bankruptcy counsel on October 30, 2020 [ECF

12].  A final order approving the employment application was entered on December 1, 2020 [ECF 48].

The Debtor, through counsel, filed an application to employ Soneet R. Kapila and the accounting firm of KapilaMukamal, LLP as accountants on November 11, 2020 [ECF 22] and an order approving the employment application was entered on December 9, 2020 [ECF 53].

The Debtor, through counsel, filed an application to employ Ashley McDowell, Esq. and the law firm of Turner, McDowell, Rowan, PLLC and Laura Dale, Esq. and Laura Dale & Associates, P.C. to represent him as special co-counsel in his pending divorce proceedings in Texas [ECF No. 114].  Deanne Lee, the Debtor's estranged spouse filed a limited objection to the application [ECF No. 135].  The Court approved the retention after the objections were resolved.

To more efficiently manage the administration of the estates and the compensation to chapter 11 professionals, on December 17, 2020, the Debtor filed the *Debtor's Motion to Establish Procedures For Monthly and Interim Compensation and Reimbursement of Expenses* [ECF 56] to authorize the compensation of his chapter 11 professionals through a monthly payment procedure. The Bankruptcy Court entered an order on January 22, 2021 approving the procedures [ECF 96].

### 2.  Meeting of Creditors / Committee of Creditors

The 341 Meeting of Creditors was conducted on November 20, 2020 [ECF 4], and it was concluded on that day. Until further notice, the United States Trustee will not appoint a committee of creditors pursuant to section 1102 of the Bankruptcy Code.

### 3.  Property Sales

As part of his efforts to reduce his monthly expenses and liquidate assets for the benefit of creditors, the Debtor retained brokers to sell the real properties located at 2420 NE 33rd Street, Lighthouse Point, FL; 42 Snowflake Drive, Unit 518, Breckenridge, CO; 42 Snowflake Drive,

Unit 410, Breckenridge, CO; and 465 Four O'clock Road, Building A, Unit 303, Breckenridge, CO. The Debtor obtained contracts for the sale of the four properties, filed motions to obtain Bankruptcy Court approval for the sales [ECF Nos. 79, 80, 81 and 82] and orders have been entered approving the sales [ECF Nos. 110, 117, 119 and 136]. The sales have all closed. The proceeds were divided with his wife.

### 4.    Homestead Sale and Transfer of Homestead to Proceeds

In connection with the sale of his homestead property [ECF No. 80], the Debtor also filed a motion to sell the Debtor's household goods and furnishings and selected art to the purchaser [ECF No. 131] and an order has been entered approving the sale [ECF No. 137]. As part of the sale order, the note to First United Bank which was a second lien on the home was paid off and assigned to the Debtor. A copy of the assignment is attached hereto as **Exhibit "A".** The Debtor has amended his schedules to claim this note as proceeds of his homestead [ECF No. 154]. In addition, the net proceeds at closing were placed into the trust account of Furr and Cohen, P.A., counsel for the Debtor. Furr and Cohen is also holding the note and collecting the payments. If the homestead exemption is allowed, approximately $2,400,000 of the proceeds from the sale of the Debtor's home will be exempt, but subject to claims of his wife.

As a result of the Debtor's sales of the Breckenridge, Colorado properties, he was no longer in need of a 2010 Lexus LX570 located in Colorado and therefore filed a motion to sell the vehicle [ECF No. 115], and an order has been entered approving the sale [ECF No. 138].

### 5.    Stay Relief Motion

The Debtor's estranged spouse, Deanne Lee, filed *Deanne Lee's Motion to Lift Automatic Stay* [ECF No. 72] to authorize the Texas Family Court presiding over the Debtor's Divorce Proceeding to finalize the divorce proceeding, including the division of property. The Debtor

consented to the relief requested and an order was entered granting the motion [ECF No. 101].

6.  **Judicial Settlement Conference with Deanne Lee**

Deanne Lee asserted an ownership interest in virtually all of the Debtor's assets, exempt and non-exempt, along with other claims and causes of action against the Debtor arising out of both the Divorce Proceeding and the Debtor's bankruptcy case, including, but not limited to the claims specifically identified and described in Proof of Claim No. 23 filed by Deanne Lee on December 3, 2020. As a result of these claims, the Debtor would have been unable to confirm a plan until such time as the claims were resolved. As a result, on July 7, 2021, the Debtor, Deanne Lee, along with their respective bankruptcy counsel and divorce counsel participated in a judicial settlement conference before the Honorable Paul G. Hyman. The Debtor and Deanne Lee resolved their economic issues and agreed to the treatment of Ms. Lee's claims as set forth on the record by Judge Paul Hyman and memorialized the Agreement Incident to Divorce and in the Term Sheet attached hereto as **Exhibit "D"**. In the Texas divorce proceeding the parties have agreed on a mediated Settlement Agreement, an Agreed Final Decree of Divorce and an Agreement Incident to Divorce. Those documents are not filed in this Chapter 11 proceeding to protect privacy issues of the family. Copies may be provided to the Court for its in camera review.

As a condition of the settlement and as a condition of her support of the confirmation of the Plan, Deanne Lee has required the entry of the Bar Order, as more specifically described herein. As additional consideration for the Bar Order, Deanne Lee has agreed to transfer and convey to the Debtor any all rights, title, and interest in and to the Restaurant Entities and the Medical Practice Entities, such that, after the Effective Date, the Debtor will be the 100% owner thereof. The Debtor would be unable to confirm the Plan absent the settlement with Deanne Lee.

11

7. **Texas Community Property Law.**

The Debtor's divorce was filed in Texas. During the marriage the debtor and his spouse have lived both in Texas and Florida and owned assets in Colorado. The debtor maintained that his residence was in Florida and the wife maintained it was in Texas. Many of their assets were in Texas. In the Texas divorce, Texas community property law was important to consider in resolving the divorce and division of property.

Section 541 of the Bankruptcy Code provides that property of the estate includes "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is – (A) under the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. §541(a)(2). The term "community property" is not defined by the Bankruptcy Code but is a term-of-art used to describe property that may be purchased or held by a married person living in a state that uses a community property system. *In re Robertson,* 203 F.3d 855, 859 (5th Cir. 2000). Texas is a community property state.

Under Texas law, all property acquired by either spouse during the marriage is community property, unless characterized as separate property. TEX FAM. CODE §3.002. Separate property is that which is owned before marriage or acquired during marriage through gift, devise or descent. TEX. FAM. CODE §3.001. Property possessed by either spouse during marriage is presumed to be community property. TEX. FAM. CODE §3.003(A). The community property presumption may be overcome by tracing and identifying the separate property. *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex. 1975).

Texas law distinguishes between sole management community property and joint managed community property. *See Montemayor v. Ortiz,* 208 S.W.3d 627, 643 (Tex. App. – Corpus Christi, 2006). Under Texas law, "each spouse has the sole management, control and disposition of community property that the spouse would have owned if single, including (1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injury; (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control and disposition." TEX. FAM. CODE §3.102(A). Marital property subject to the sole management, control and disposition of one spouse will not be subject to any non tortious liability of the other spouse. *See* TEX. FAM. CODE §3.202.

Marital property liability rules in Texas are complex. Creditors' claims to marital property vary based upon the type of property involved. *See* TEX. FAM. CODE §3.202.

1) Rules of Marital Property Liability – TEX. FAM. CODE §3.202:

(a)    A spouse's separate property is not subject to the liability of the other spouse unless both spouses are liable by other rules of law.

(b)    Unless both spouses are personally liable as provided by Section 4.031 of this code, the community property subject to a spouse's sole management, control and disposition is not subject to:

(1)    any liabilities that the other spouse incurred before marriage; or

(2)    any non-tortious liabilities that the other spouse incurs during marriage.

(c)    The community property subject to a spouse's sole or joint management, control and disposition is subject to the liabilities incurred by him or her before or during marriage.

(d)    All the community property is subject to tortuous liability of either spouse incurred during marriage.

When liability attaches to marital property under TEX. FAM. CODE §3.202, the property remains subject to execution by creditors as long as both the debt and property exist. Creditors' rights of execution

are not affected by the death of either spouse or by divorce. *See* TEX. PROB. CODE §156 (community liabilities continue after death); *See also* (Tex. App.- Houston 14th Dist. 1981, writ ref'd n.r.e.) (community liabilities continue after divorce.

## (C) SOURCE OF FINANCIAL INFORMATION

The source of financial information for this Disclosure Statement and the accompanying Plan is from reports from the Debtor and his professionals. The financial information has not been audited.

## ARTICLE III

## DEBTORS' OPERATION AND STRUCTURE

### (A) SYNOPSIS OF OPERATION IN CHAPTER 11

During the course of this chapter 11 bankruptcy proceeding, the Debtor operated as a Debtor in Possession. The Debtor has maintained adequate insurance and has and will continue to file all monthly operating reports and pay all U.S. Trustee fees.

### (B) PROJECTED FEASIBILITY OF PLAN

The Debtor believes that there is minimal risk to creditors as to the completion of the Plan. The Plan will be funded primarily by the Debtor's Cash on Hand, operating income, income generated from property sales and any additional Cash held by the Debtor and contributions by the Debtor's parents as of the date of the Confirmation Hearing. All payments take place at confirmation. Based on the foregoing, the Debtor asserts that he is able to perform all of his obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## (C) EXECUTORY CONTRACTS

Article VI of the Plan entitled "Executory Contracts" indicates that all executory contracts and unexpired leases of the Debtor not expressly assumed will be rejected. The Debtor has previously assumed the lease with GHW Associates LLP [ECF No. 172].

## (D) OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS

Pursuant to the Plan, the Debtor may object to any scheduled Claim or POC. Such an objection shall preclude the consideration of any Claims as "Allowed" for the purposes of timely distributions in accordance with the Plan. The deadline to file non-governmental claims is January 4, 2021, and the deadline to file governmental claims is April 21, 2021. At the time of the filing of this Disclosure Statement, the Debtor has filed his initial claims objections and is in the process of analyzing Claims and determining whether to object to any other Claims.

All indebtedness scheduled by the Debtor, which is not scheduled as disputed, contingent or unliquidated, or any indebtedness set forth in a properly executed and filed proof of claim, shall be deemed an allowed claim unless the same is objected to, and the objection thereto is sustained by the Court.

THE DEBTOR RESERVES HIS RIGHTS TO FILE FURTHER OBJECTIONS TO CLAIMS, SCHEDULED AND NON-SCHEDULED, AS WELL AS OBJECTIONS TO ADMINISTRATIVE EXPENSES, AND/OR SEEK RECONSIDERATION OF THE ALLOWANCE OF ANY CLAIM. The deadline to file objections to claims will be established by this Court's order setting a confirmation hearing.

The Debtor has not yet identified any potential preference or voidable transfer actions. The Debtor continues to analyze whether there are any other avoidance actions which the Debtor can pursue, but as of the time of this filing, believes that none exist that would merit the use of the

estate's resources, due to collectability and/or probability of litigation success.

ARTICLE IV

TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 General. Unless otherwise specified, all payments under this Plan shall be paid three days following the Effective Date, which will be the fifteenth day following the date on which the Bankruptcy Court enters a Final Order of confirmation on its docket, and in the event that such date is a Saturday, Sunday, or legal holiday, the next day thereafter.

4.2 Administrative Claims. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a Final Order allowing any such administrative claim, whichever is later; or (b) upon such other terms as may be agreed to between the Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) counsel for the Debtor and other professionals of the estates, who shall file a fee application by the deadline set by the Bankruptcy Court, approximately twenty-one (21) days before the plan confirmation hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Bankruptcy Court approval.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, shall be filed with the Court and served upon the Debtor at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Court. Except as provided herein, any

Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

3.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

3.4 <u>Tax Claims</u>. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by section 507(a)(8) of the Bankruptcy Code. Although the Debtor does not believe there are any such claims, to the extent there are, they shall be paid in full on the Effective Date.

3.5 <u>Classification of Claims</u>.

**Class 1 – Allowed Secured Claim of JPMorgan Chase Bank:**

(a)    <u>Description:</u>  Class 1 consists of the secured claim of JPMorgan Chase Bank, National Association, secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #37 in the amount of $619,103.73.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 1 Claim is unimpaired and the Class 1 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 2 – Allowed Secured Claim of First United Bank & Trust Co.:**

(a)    <u>Description:</u>  Class 2 consists of the secured claim of First United Bank & Trust Co., secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #46 in the amount of $1,864,444.45.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.  The note evidencing the claim was assigned to the Debtor in connection with the satisfaction of the

17

obligation.

(c)    Impairment:  The Class 2 Claim is unimpaired and the Class 2 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 3 – Allowed Secured Claim of First United Bank & Trust Co.:**

(a)    Description:  Class 3 consists of the secured claim of First United Bank & Trust Co., secured by a mortgage on the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #47 in the amount of $170.86.

(b)    Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    Impairment:  The Class 3 Claim is unimpaired and the Class 3 Claimholder is not entitled to vote to accept or reject the Plan.

**Class 4 – Allowed Secured Claim of Broward County Tax Collector**

(a)    Description:   Class 4 consists of the secured claim of the Broward County Tax Collector for 2020 property taxes, secured by the Debtor's homestead, located at 2420 NE 33rd Street, Pompano Beach, Florida.  The claimant filed POC #15 in the amount of $35,997.11.

(b)    Treatment:   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    Impairment:  The Class 4 Claim is unimpaired and the Allowed Class 4 Claimholder is deemed to have accepted the Plan.

**Class 5 – Allowed Secured Claim of Americredit Financial Services, Inc.**

(a)    Description:  Class 5 consists of the Allowed Secured Claim of Americredit Financial Services, Inc. based on amounts due pursuant to an automobile loan for a 2020 GMC Yukon XL.  The claimant filed POC #3 in the amount of $79,644.33.

(b)    <u>Treatment:</u>  The Claimant shall continue to be paid in accordance with the terms of the documents evidencing the Claim until such Claim has been paid in full.  The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full.

(c)    <u>Impairment:</u>  The Class 5 Claim is unimpaired and the Allowed Class 5 Claimholder is deemed to have accepted the Plan.

**<u>Class 6 – Allowed Secured Claim of Bank of America</u>**

(a)    <u>Description:</u>  Class 6 consists of the Allowed Secured Claim of Bank of America based on amounts due pursuant to a loan for the purchase of an N 2007 Sea Ray 52DB boat.  The claimant filed POC #1 in the amount of $408,104.36

(b)    <u>Treatment:</u>  Pursuant to the *Proposed Notice of Abandonment* [ECF No. 62], filed by the Debtor on December 24, 12, 2020, the Debtor has abandoned his interest in the collateral securing the claim.  To the extent necessary, the claimant will have relief from the automatic stay to pursue recovery of the collateral.  The claimant will receive no further distribution from the estate.

(c)    <u>Impairment:</u>  The Class 6 Claim is unimpaired and the Allowed Class 6 Claimholder is deemed to have accepted the Plan.

**<u>Class 7 – Allowed Secured Claim of Great Midwestern Bank</u>**

(a)    <u>Description:</u>  Class 7 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 465 Four O'Clock Road, #303A, Breckenridge, Colorado. The Debtor scheduled the claim at $425,264.90.

(b)    <u>Treatment:</u>   This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 7 Claim is unimpaired and the Class 7 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 8 – Allowed Secured Claim of Great Midwestern Bank

(a)    <u>Description:</u>  Class 8 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 42 Snowflake Drive, Breckenridge, Colorado. The Debtor scheduled the claim at $683,818.29.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 8 Claim is unimpaired and the Class 8 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 9 – Allowed Secured Claim of Great Midwestern Bank

(a)    <u>Description:</u>  Class 9 consists of the Allowed Secured Claim of Great Midwestern Bank, secured by a mortgage on property located at 42 Snowflake Drive, Breckenridge, Colorado. The Debtor scheduled the claim at $305,217.89.

(b)    <u>Treatment:</u>  This claim is unimpaired and was paid in full when the property securing the claim was sold.  The claimant will receive no further distribution.

(c)    <u>Impairment:</u>  The Class 9 Claim is unimpaired and the Class 9 Claimholder is not entitled to vote to accept or reject the Plan.

## Class 10 – Allowed Secured Claim of Toyota Motor Credit Corporation

(a)    <u>Description:</u>  Class 10 consists of the Allowed Secured Claim of Toyota Motor Credit Corporation based on amounts due pursuant to an automobile loan for a 2020 Lexus RX350.  The claimant filed POC #16 in the amount of $44,950.00.

(b)    <u>Treatment:</u>  The Claimant shall continue to be paid in accordance with the terms

of the documents evidencing the Claim until such Claim has been paid in full.  The Claimant shall retain any liens upon the collateral securing the Claim until such time as the Claim has been paid in full.

(c)    Impairment:  The Class 10 Claim is unimpaired and the Allowed Class 10 Claimholder is deemed to have accepted the Plan.

**Class 11 – Allowed Secured Claims of First United Bank & Trust Co.**

(a)    Description:  Class 11 consists of the Allowed Secured Claims of First United Bank & Trust Co. based on personal guarantees of debts of the Debtor's subsidiaries.  The claimant filed POC #29, 30, 31, 32, 33, 34, ,35, 36, 40 and 41, all claiming an amount due of $0 and asserting a security interest in a certificate of deposit of one of the Debtor's Restaurant Entities.

(b)    Treatment:  The Restaurant Entities will continue to service the debt in the ordinary course of business.  The Debtor will remain on his personal guaranty.

(c)    Impairment:  The Class 11 Claim is impaired.

**Class 12 – Allowed Secured Claim of First United Bank & Trust Co.**

(a)    Description:  Class 12 consists of the Allowed Secured Claim of First United Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from Restaurant Entity, Crazy Silky Sharks, Inc. to the claimant.  The claimant filed POC #43 in the amount of $100,423.02, which asserts that the value of the collateral exceeds the amount of the claim.

(b)    Treatment:  This claim shall be paid at confirmation by Crazy Silk Sharks., Inc. from funds provided by the Debtor's parents.

(c)    Impairment:  The Class 12 Claim is unimpaired.

**Class 13 – Allowed Secured Claim of First United Bank & Trust Co.**

(a)    Description:  Class 13 consists of the Allowed Secured Claim of First United Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from Restaurant Entity, Crazy Blue Fish House LLC to the claimant.  The claimant filed POC #44 in the amount of $1,662,700.77, which asserts that the value of the collateral exceeds the amount of the claim. The main collateral is a warehouse owned by Crazy Blue Fish House LLC.

(b)    Treatment:  Crazy Blue Fish House LLC will continue to service the debt in the normal course of business and the creditor will continue to maintain its first priority mortgage lien on the real property and improvements.  As noted in the provisions relating to the Class 15 claim below, Deanne Lee will be granted a second priority mortgage lien inferior to the first priority mortgage lien securing the Class 13 Claim as part of the Bankruptcy Settlement Agreement.  The Debtor will remain on his personal guaranty.

(c)    Impairment:  The Class 13 Claim is impaired.

**Class 14 – Allowed Secured Claim of First United Bank & Trust Co.**

(a)    Description:  Class 14 consists of the Allowed Secured Claim of First United Bank & Trust Co. based on amounts due to the claimant as a result of the Debtor's guaranty of obligations from Restaurant Entity, El Loco Sakana, Inc. to the claimant.  The claimant filed POC #45 in the amount of $214,392.55, which asserts that the value of the collateral exceeds the amount of the claim.

(b)    Treatment:  This claim will be paid in full at confirmation by El Loco Sakana, Inc., from funds provided by the Debtor's parents.

(c)    Impairment:  The Class 14 Claim is unimpaired.

**Class 15 – Allowed Priority Claim of Deanne Lee**

(a)    Description:  The Class 15 Claim consists of the Allowed Priority Claim of Deanne Lee, the Debtor's estranged spouse, arising out of pre-petition and post-petition claims for (i) spousal support and child support, which claims are domestic support obligations under Section 101(14) of the Bankruptcy Code, and (ii) claims for reimbursement, contribution, indemnity, and attorney's fees, and is evidenced by the Spouse POC[1].

(b)    Treatment:  Deanne Lee filed her *Motion to Lift Automatic Stay* [ECF No. 72] on January 8, 2021, seeking relief from the automatic stay so that the Divorce Action can be finalized. Stay relief has been granted [ECF No. 101] and the Debtor and Deanne Lee have resolved their issues as set forth on the record by Judge Paul Hyman and memorialized in the Bankruptcy Settlement Agreement, Agreed Divorce Decree, and Agreement Incident to Divorce.   The Economic terms of the Divorce are described on the attached Term Sheet hereto as **Exhibit "D"**. All the economic terms of the Agreement Incident to Divorce are incorporated into the Debtor's Plan and constitute the treatment of Deanne Lee's Class 15 claim.   In addition to division of certain property, she is to be paid $1,400,000 within three days of the effective date of the Plan and an additional $1,250,000 payable for a term of 5 years, amortized over 7 years with an interest rate of 6%. Payments for 59 months shall be in the amount of $18,260.69 with a final balloon payment in month 60 of the remaining principal.    This note shall be secured by a lien on the Warehouse real and personal property second only to the lien of First United Bank and shall be guaranteed by all of the restaurant entities. This debt shall be non-dischargeable. Deanne Lee, as the holder of the Class 15 claim, will receive the payments and property as described, divided, allocated, transferred, and set aside to her under the terms of the Settlement Agreement, including the present

---

[1]   The Spouse POC was filed in an undetermined priority amount.

and future payment by the Debtor of the child support and spousal obligations set forth in the Agreed Divorce Decree.  Certain payments for property division and support obligations of the Debtor under the terms of the Settlement Agreement will be evidenced by the Settlement Loan Documents, including the granting of a second priority lien against the warehouse property owned by Crazy Blue Fish House, LLC as referenced in the provisions regarding the treatment of the Class 13 Claim above.   As a condition of the Settlement Agreement and as a condition of her support of the confirmation of this Plan, Deanne Lee has required the entry of the Bar Order, as more specifically described herein.  As additional consideration for the Bar Order, Deanne Lee has agreed to transfer and convey to the Debtor any and all rights, title, and interest in and to the Restaurant Entities and the Medical Practice Entities, such that, after the Effective Date, the Debtor will be the 100% owner thereof.

(c)     Impairment:  The Class 15 Claim is impaired and entitled to vote to accept or reject the Plan.   Under the terms of the Settlement Agreement, Deanne Lee has agreed to vote to accept the Plan; provided, however, that Deanne Lee has reserved the right to withdraw such support and vote for acceptance of the Plan in the event of (a) any changes, modifications, or revisions of the terms and provisions of the Settlement Agreement; (b) changes or modifications of the treatment of her Class 15 Claim; (c) the failure of the Family Court to approve the Agreed Divorce Decree, or (d) the failure of the Bankruptcy Court to approve the Bar Order.

**Class 16 – Allowed General Unsecured Claims**

(a)     Description:  Class 16 consists of the Allowed Claims of the general unsecured creditors of the Debtor. A list of all creditors, including general unsecured creditors, is attached as **Exhibit "B"** to the Disclosure Statement.

(b)     Treatment: As provided in additional detail in the Liquidation Analysis, attached as

**Exhibit "C"** to the Disclosure Statement, the Debtor estimates that if this case were converted to a Chapter 7 case, the holders of Class 16 Claims would receive little or no distribution. If the Plan is confirmed, each holder of an Allowed general unsecured Claims against the Debtor will receive its share of $500,000 distributed *pro rata* on the Effective Date. Holders of Allowed General Unsecured Claims will receive no further distribution. The *pro rata* distribution to the Class 16 claimants shall be in full satisfaction, settlement, release and discharge of their respective Allowed Class 16 Claims. The Debtor estimates that there will be slightly greater than $5 Million of allowed General Unsecured Claims and, therefore, the distribution paid to each holder of an Allowed General Unsecured Claim on the Effective Date will be slightly less than 10%.

(c)      Impairment: The Class 16 Claims are impaired and any of the Allowed Class 16 Claimholders are entitled to vote to accept or reject the Plan.

**Class 17 – Allowed Spouse Lease Guarantee Claims**

(a)      Description: Class 17 consists of the Allowed Claims of the Guaranteed Entities.

(b)      Treatment: In addition to any other treatment such Restaurant Entities may receive in the Plan in Class 16, the Guaranteed Entities that have filed claims, First Colony Mall, claim #48 and Crocker Downtown Development, claim #49, will also receive a *pro rata* distribution sufficient to make their aggregate total distribution under the Second Amended Plan $400,000. This payment shall be payable from the Debtor's exempt assets, upon which Deanne Lee has asserted a claim and contributed by Deanne Lee. The Bar Order described herein will be entered in favor of Deanne Lee in consideration for her contribution to the lease guarantee creditors and her agreement to release her claims against all property of the Debtor's estate other than the property she is to receive pursuant to and in accordance with the Settlement Agreement. The Debtor would be unable to confirm the Plan (or any plan) without Deanne Lee's agreement to

release her asserted claims described in the Spouse POC against estate property. Landlord Galleria Mall Investors LLP ("Galleria Mall") and Crazy Lion Fish, Inc. will execute a modified lease and related release agreement, pursuant to which Deanne Lee will be released from her obligations under that certain Guaranty, dated April 16, 2019 (the "Galleria Dallas Guaranty"). Debtor shall remain as the sole guarantor under the Galleria Dallas Guaranty and will reaffirm his liability thereunder in the Plan.

(c)     Bar Order. With respect to the Guaranteed Entities, the Confirmation Order shall contain a "Bar Order" under and pursuant to section 105 of the Bankruptcy Code to the effect that, **except as expressly otherwise permitted by the Plan, Confirmation Order, or the Settlement Agreement, all Barred Persons (as defined below) are permanently enjoined, restrained and barred, as of the Effective Date of the Plan, from filing, commencing, conducting, asserting, litigating, or continuing in any manner, directly, indirectly or derivatively, any suit, action, claim, demand, or other proceeding (including without limitation, any proceeding in any judicial, arbitral, administrative, or other forum) against, implicating, or involving Deanne Lee and any real or personal property retained, awarded, or transferred to her in accordance with the terms of the Settlement Agreement, or the Plan, regarding any and all obligations or liabilities she might have, if any, with respect to:**

(a)     **any claims by any creditors of the Debtor for any guarantees of leases relating to real property occupied by Debtor or one or more of the affiliates of the Debtor, including the following entities:**

(i)     **Crazy Lemon Sharks, Inc.**

(ii)    **Crazy Clown Fish, Inc.;**

(iii)   **Crazy Crawfish, Inc.; and**

(iv)    **Crazy Puffer Fish, Inc.;**

(b)    **any leases for any equipment, fixtures, or other personal properties used in the operation of the Guaranteed Entities; and**

(c)    **any other debts, liabilities, or obligations of the Debtor or the Guaranteed Entities, whether written or oral, liquidated or unliquidated, contingent or otherwise, incurred in connection with the operations of the Restaurant Entities, or the Medical practice Entities prior to the Effective Date of the Plan.**

**For purposes of the Bar Order, the term "<u>Barred Persons</u>" shall mean any person or entity that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest in or other right against, in, arising out of, or in any way related to the Debtor, or the Debtor's bankruptcy estate, whether that person or entity filed a proof of claim or otherwise. Barred Persons shall not include Galleria Mall.**

**(d) Bar Order Analysis**

**Necessity of a Bar Order and the Requirements for Approval**

The Bar Order is an essential, material, and integral component of the compromise between the Debtor and Deanne Lee, and the Bar Order satisfies the applicable provisions of the Bankruptcy Code and controlling law in the Eleventh Circuit, including *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1337 (11th Cir. 2017) and *Munford v. Munford, Inc. (In re Munford)*, 97 F.3d 449 (11th Cir. 1996), *In Re Cento Group, LLC*, 2021 WL 5158001 (11th Cir. 2021) and their progeny.

At the most basic level, a bar order is appropriate, within the Bankruptcy Court's inherent power under section 105(a) of the Bankruptcy Code to issue any order necessary or appropriate to

carry out the provisions of the Bankruptcy Code, if the bar order is fair and equitable. *U.S. Oil & Gas v. Wolfson,* 967 F.2d 489, 493-94 (11th Cir. 1992). "Bar orders incorporated into settlements are considered fair and equitable if: (1) the bar order fulfills the long-standing public policy of encouraging pretrial settlements; (2) the settlement satisfies the requirements for the approval of settlements under *Justice Oaks* for a fair and reasonable agreement; and (3) the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in *Matter of Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996)." *Brophy v. Salkin*, 550 B.R. 595, 599 (S.D. Fla. 2015).

Here, the Debtor believes that the entry of the Bar Order is fair, equitable, reasonable and in the best interest of the estate in light of the facts and circumstances of this case, the substance of the claims and defenses thereto, the administrative burdens of litigation, and the significant risks inherent in litigation.

### *Bar Order Necessary for Settlement*.

Because the settlement between the Debtor and Deanne Lee is strictly conditioned upon the entry and finality of the Bar Order and the language of the Bar Order is reasonable, the Bankruptcy Court should approve its entry as part of the Plan and the order confirming the Plan. The Bar Order is an essential and critical element of the Settlement Agreement, and is fair and equitable to all constituents of the Debtor's estate. The parties engaged in hard-fought, arms-length, good-faith negotiations, and agreed to the Bar Order, the language of which is set forth in the Settlement Agreement, as part of an integrated compromise. Its inclusion in the order confirming the Plan is required in the Settlement Agreement.

The agreement of Deanne Lee to settle and compromise her claims is strictly conditioned on the entry and finality of the Bar Order. Deanne Lee has significant exposure to the Guaranteed Entities and she was unwilling to settle any of her claims in the Divorce Action

without the certainty of the Bar Order. The Guaranteed Entities will receive significant additional consideration in exchange for the Bar Order as those Guaranteed Entities who have filed claims will have a total recovery in the aggregate under the Plan of $400,000. Without the Bar Order, there would, quite simply, be no settlement with Deanne Lee. Finally, the Bar Order is narrowly tailored and only releases claims arising from or relating to the Guaranteed Entities.

### *Identity of Interests*.

The Guaranteed Entities have claims against both the Debtor and Deanne Lee with respect to guarantees upon which the Debtor and Deanne Lee are jointly liable. It is possible that in the context of the Divorce Action, the Debtor may be required to indemnify Deanne Lee for any liability she has with respect to the Guaranteed Entities. As a result, the Debtor will not have any degree of certainty with respect to his ongoing and future obligations, which would make it impossible for him to successfully confirm any plan absent the Settlement Agreement and Bar Order.

### *The Non-Debtor Has Contributed Substantial Assets to the Reorganization.*

Deanne Lee has contributed substantial assets to the reorganization through the release of her claims against the Debtor and his assets and her agreement to convey any interest she may have in the Debtor's restaurant entities and medical practices to the Debtor as part of the proposed settlement. She is also contributing to the payment in Class 17.

### *Whether the Injunction is Essential to the Reorganization.*

The Bar Order is essential to the Debtor's reorganization. The Bar Order is an essential component of the Settlement Agreement. As set forth herein, the Debtor would be unable to reorganize without resolving the claims of Deanne Lee against his assets.

### *Mechanism For Payment to Affected Classes.*

The Guaranteed Entities filing claims will receive a payment under the Plan in addition to any other payment that they might receive under the Plan. The Debtor and Deanne Lee are making funds available for a distribution in the aggregate of $400,000 for a *pro rata* distribution under classes 16 and 17 to the Guaranteed Entities who have filed timely claims.

### *Complexity of Settled Claims.*

As noted above, the Debtor is settling the most significant and complex claims through the Settlement Agreement. Without the settlement provided for in the Settlement Agreement, Deanne Lee's claims against the Debtor and his assets, which hold priority status, would need to be litigated in the Divorce Action in Texas and that litigation could extend for years, including potential appeals, thereby precluding the Debtor from confirming any plan or making any distribution to creditors for years.

### *Depletion of Estate Resources.*

Absent settlement with the Bar Order, the Debtor risks years of expensive and unpredictable litigation with Deanne Lee. The Debtor and Deanne Lee and their respective divorce counsel have divergent views as to Deanne Lee's claim and the claims would be vigorously litigated. All the while, creditors in this case will receive nothing, most likely result in a chapter 7, and increased administrative fees.

Accordingly, the Debtor strongly believes that the Bar Order should be approved in connection with and as an integral component of the confirmation of the Plan.

(e)    Impairment:  The Class 17 Claims are impaired and any of the Allowed Class 17 Claimholders are entitled to vote to accept or reject the Plan.

ARTICLE V

CLAIMANTS AND VOTING

Claimants entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court. According to the Plan, Classes 11, 13, 15, 16 and 17 are impaired. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.

A ballot to be completed by the holders of claims and/or interests is included herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Court and made binding upon all claimants and interest holders if (a) with respect to impaired classes of claimants, the Plan is accepted by holders of at least two-thirds in amount and more than one-half in number of claims in each such class voting upon the Plan and (b) with respect to classes of interest holders, if the Plan is accepted by the holders of at least two-thirds in amount of the allowed interests of such class held by holders of such interests. In the event the requisite acceptances are not obtained, the Court may, nevertheless, confirm the Plan if it finds pursuant to Section 1129 of the Bankruptcy Code that the Plan does not discriminate unfairly and accords fair and equitable treatment to any impaired class that does not accept the Plan.

ARTICLE VI

ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS

All payments as provided for in the Plan shall be funded by the Debtor's Cash on Hand, his operating income, and the proceeds from property sales, unless otherwise stated.

The Debtor believes that this Plan is in the best interest of creditors as the Debtor is proposing an immediate one-time payment of $500,000 to general unsecured creditors with no

contingency. It provides a payment to Guaranteed Entities filing claims of $400,000 in the aggregate. This Plan provides for the finality and certainty as to the treatment of the various claims. It also provides for an immediate payment to the Guaranteed Entities filing claims with no contingency.

As with any Plan, an alternative would be a conversion of the chapter 11 case to a chapter 7 case and subsequent liquidation of the assets of the Debtor by a duly appointed or elected trustee. In the event of a liquidation under chapter 7, the following is likely to occur:

> (a) An additional tier of administrative expenses under section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include the chapter 7 trustee's commissions and fees to the trustee's attorneys, accountants, and other professionals likely to be retained by him or her for the purposes of liquidating the assets of the Debtor; and

> (b) Further claims could be asserted against the Debtor with respect to such matters as taxes associated with the sale of his assets and the inability of the Debtor to fulfill outstanding, contractual commitments and other related claims.

Predicated upon the foregoing and the significant additional administrative expenses that would be incurred if the case were converted to chapter 7, it is the Debtor's opinion that a conversion to chapter 7 would be insufficient to make any meaningful payments to any class of creditors other than the secured creditors, and the domestic support obligation creditor leaving no significant monies available for the claims of any other classes of creditors.

ARTICLE VII

RISK ANALYSIS

The Debtor believes there is minimal risk to the creditors if the Plan is confirmed as the Debtor's Cash on Hand, operating income and proceeds from property sales will be sufficient to satisfy the Plan payments.

ARTICLE VIII

POST-CONFIRMATION DEBTOR'S STRUCTURE

The Debtor shall continue to exist after the Effective Date with all assets re-vesting in the Debtor. Following the Effective Date, the Debtor shall be free to operate and perform any and all lawful acts without further order from the Bankruptcy Court, subject only to the terms of the Plan and Confirmation Order.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtor shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein.

ARTICLE IX

CONFIRMATION BY "CRAM DOWN"

The Debtor reserves the right, in the event that impaired classes reject the Plan, to seek confirmation of the Plan by "cram down" if the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed "fair and equitable" if it provides (i) that each holder of a Secured Claim retains its lien and receives deferred Cash payments totaling at least the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to the lien, and (ii) that each holder of an unsecured claim receives property

of a value equal to the allowed amount of its claim, or no holder of a junior claim receives or retains any property on account of such claim.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

10.1     Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

10.2     At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become an amended Plan.

10.3     At any time after the Confirmation Date, and before substantial consummation of the Plan, the Debtor may modify the Plan with permission of the Court so that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become an amended Plan.

10.4     After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

ARTICLE XI

DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, the Debtor is required to pay the appropriate sums required pursuant to section 1930(a)(6) within ten days of the entry of the order confirming the Plan. The Debtor must also file all monthly operating reports for the relevant periods indicating the Cash disbursements for the relevant period.

With respect to post-confirmation periods, the Debtor will pay the United States Trustee fee for post-confirmation periods based upon all post-confirmation disbursements made by the Debtor. The Debtor will also file all post-confirmation quarterly operating reports with the Bankruptcy Court until the earlier of the closing of this case or upon dismissal or conversion of this case.                                          ARTICLE XII

EFFECT OF CONFIRMATION OF PLAN

Binding Effect. Except as otherwise provided in the Plan or the Confirmation Order, the Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims, and their respective successors and assigns.

Compromise and Settlement. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Court's finding and

35

determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, his estate and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

<u>Discharge of Debtor; Request to Administratively Close Case; and Final Decree.</u>  Pursuant to section 1141(d)(5) of the Bankruptcy Code, upon completion of all payments required under the Plan, the Bankruptcy Court shall grant a discharge to the Debtor of any debt that arose before the Confirmation Date, and any debt of a kind specified in sections 502(g), 502(h) or 502(i), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) excepted from discharge pursuant to section 523 of the Bankruptcy Code; (iii) of a kind specified in section 1141(d)(6)(A) of the Bankruptcy Code if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iv) of a kind specified in section 1141(d)(6)(B) of the Bankruptcy Code.  For any of avoidance of doubt, the Debtor shall not be discharged from his obligations arising under the Galleria Dallas Guaranty, which Guaranty and the obligations arising thereunder are hereby reaffirmed in their entirety and shall survive Plan confirmation.

The Debtor will be permitted to seek to administratively close the Case pending completion of the payments required under the Plan prior to the entry of the order of discharge (the "Motion to Close") after the following events have occurred: (i) payment of the initial payment due to Class 16 creditors on the Effective Date; (ii) payment of all outstanding quarterly United States Trustee Fees due on disbursements made as of the date of the hearing on the Motion to Close; (iii) filing of all required Post-Confirmation Quarterly Operating Reports; and (iv) the filing of all outstanding federal income tax returns.  The Motion to Close shall certify that each of the above conditions has been met.

During the time that the Case is temporarily closed, the provisions of the Confirmation Order shall remain in effect with respect to the treatment of creditor claims that existed as of the Petition Date, provided the Debtor continues to be in compliance with the Plan and the Confirmation Order, and as long as the Debtor timely makes all of the payments to Class 16 creditors, as contemplated under the Plan.

Upon satisfaction of all payments required under the Plan to Class 16 creditors, the Debtor may file a motion to reopen the Case, pursuant to section 350(b) of the Bankruptcy Code. If and when the Debtor chooses to file such a motion, any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Class 16 creditors.

Upon the re-opening of the Case, the Debtor shall promptly file a Final Report of Estate and Motion For Final Decree Closing Case on the Bankruptcy Court-approved local form in effect at that time, which shall certify that all payments required under the Plan to Class 16 creditors have been made. The Bankruptcy Court may then grant the Debtor a discharge, pursuant to section 1141(d)(5) of the Bankruptcy Code, if all other conditions are satisfied.

**Exculpation. Notwithstanding any provision contained in the Plan to the contrary, the Debtor, Deanne Lee, the Debtor's professionals, and any property of the foregoing (collectively, the "Exculpated Parties") shall not have or incur any liability to any entity for any prepetition act taken or omitted to be taken in connection with, related to or arising from authorizing, preparing for or filing the Case, or any post petition act taken or omitted to be taken in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, administration of the Plan, the Disclosure**

37

Statement, the exhibits to the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with the Plan, or any other post petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the Case, or the confirmation or consummation of the Plan, including, but not limited to (i) any orders approving sales; (ii) formulating, preparing, disseminating, implementing, confirming, consummating, or administrating the Plan (including soliciting acceptances thereof); (iii) the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with the Plan; or (iv) any distributions made pursuant to the Plan, except for acts constituting willful misconduct, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Notwithstanding the foregoing, for the avoidance of the doubt, this section does not (i) prevent or limit the ability of the Debtor to object to a Claim of an Exculpated Party on any basis other than matters exculpated herein, or (ii) prevent or limit the ability of the Debtor to object to, or defend against, on any basis (a) any Administrative Claim of an Exculpated Party for substantial contribution, or (b) any Administrative Claim of an Exculpated Party arising solely from the Exculpated Party's capacity as a director, provided, however that, nothing in this (ii)(b) shall prevent any Exculpated Party from recovering on a claim under any Debtor's post-petition director and officer insurance policy. The exculpations provided for in this provision include any claims against the community marital estate of the Debtor and Deanne Lee.

**Injunction**. The Confirmation Order shall provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor are, with respect to any

such Claims, permanently, enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or any of his property; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against the Debtor; (iii) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, or any of their property, except as contemplated or allowed by the Plan; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (v) prosecuting or otherwise asserting any right, claim or cause of action against any Exculpated Party, that has been exculpated pursuant to the Plan; provided, however, that the injunction provided herein above shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan.

The Confirmation Order shall also provide, among other things, that all entities who have held, hold, or may hold Claims against the Debtor are permanently enjoined from and after the Confirmation Date from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor on account of any

such Claim; and (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim; **provided, however**, that nothing contained in the Plan shall preclude the IRS from pursuing an action against any entity, or any governmental entity from pursuing a criminal action against any entity, **provided, further**, that nothing in the Plan shall constitute a waiver of any rights or defenses of such persons with respect to such actions. The injunctions provided for in this provision include any claims against the community marital estate of the Debtor and Deanne Lee.

**Provided, however, the injunctions provided for in this provision shall not preclude Galleria Mall Investors LLP from pursuing any action against the Debtor or enforcing its rights under the Galleria Dallas Guaranty, which Guaranty will remain in place and shall survive confirmation of the Plan**

**By accepting distributions pursuant to the Plan, each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.**

Indemnification Obligations. Except unless expressly provided in a previously entered Order of this Court, the Plan or any contract, instrument, release or other agreement or document entered in connection with the Plan, any and all indemnification obligations that the Debtor or the community marital estate of Debtor and Deanne Lee have pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory; provided, however, that (i) all rights, if any, of the Debtor, and the estate in and to any of the Debtor's insurance policies hereby are expressly reserved and are not limited in any way by the Plan; and (ii) nothing in the Plan shall be deemed to modify any indemnification obligations of the

Debtor pursuant to an Order of this Court concerning the retention or employment of a professional. Nothing in the Plan shall be deemed to release the Debtor's insurers from, or limit the obligations of, any of the Debtor's insurers concerning any claims that might be asserted by insureds, additional insureds, or counter-parties to contracts or agreements providing for the indemnification by and of the Debtor, to the extent of available coverage.

Terms of Injunctions or Stays. Unless otherwise provided in the Plan or an Order of the Court, all injunctions or stays provided for in the Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed.

## ARTICLE XIII

## TAX IMPLICATIONS OF THE PLAN

The Debtor believes that confirmation of the Plan will not have any adverse tax implications for the estate. *The Debtor strongly urges that each creditor consult with its own tax advisor regarding the Federal, state, local and other tax consequences which the implementation of the Plan will have on them.*

## ARTICLE XIV

## CONCLUSION

Under the Plan, all creditors of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in this Plan are fair and afford all claimants and interest holders equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

This Disclosure Statement is respectfully submitted:

_____
ALEXANDER DONG LEE


Furr & Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Robert C. Furr*
    Robert C. Furr, Esq.
    Florida Bar No. 210854
    rfurr@furrcohen.com
    Alvin S. Goldstein, Esq.
    Florida Bar No. 993621
    agoldstein@furrcohen.com